KEEL ET AL. *v.* BOARD OF SUP'RS OF HARRISON COUNTY.

[88 South. 625, No. 21847.]

FISH. *County boards may prohibit seines, though waters also contains sea fish.*

Under section 2304 et seq., Code of 1906,. section 4699 et seq., Hemingway's Code, conferring, upon boards of supervisors full authority for the protection and preservation of fresh-water fish in their respective counties, such boards may prohibit the use of nets and seines, etc., for the catching of fish in any of the waters in their respective counties, although such waters may be inhabited by sea fish as well as by fresh-water fish.

·APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Suit by L. M. Keel and others against the Board of Supervisors of Harrison County. From a decree dismissing the bill, complainants appeal. Affirmed.

*Mize & Mize,* for appellants.

We will preface our argument by saying that there is no other case like this. It is certainly a case of first impression. Here is the legal proposition for this court to decide: The board of supervisors unquestionably has juris-

diction to prohibit the catching of fresh water fish by the use of nets. The board of supervisors has absolutely no jurisdiction over salt water fish. Here are waters where salt water fish of different kinds in large numbers are commingled with fresh water fish, the evidence, fairly stated, showing that the salt water fish predominate. Now, can the board of supervisors prohibit fishermen from using nets to catch salt water fish which they have the right to catch when such catching of salt water fish may result in the catching of fresh water fish also, over which the board has jurisdiction, when any fresh water fish that may be caught in these nets can be put back in the water with practically negligible injury to the fresh water fish; and when, at the same time the use of nets in said waters will result in the catching of numbers of gars in the nets and the killing of these gars, which are the natural enemy of salt and fresh water fish, and the destruction of these gars so caught being proportionately more beneficial to the fresh water fish in said waters than is the catching of fresh water fish in nets used for catching salt water fish destructive to fresh water fish?

Section 2305 of the Annotated Code of Mississippi of 1906 gives boards of supervisors jurisdiction over fish and game; and by section 2304 of said code, fish is construed to mean fresh water fish; so it therefore follows that the board of supervisors has no jurisdiction over salt water fish in these waters; and it is our contention that the injunction prayed for should have been granted restraining the board from putting in operation said ordinance so far as it relates to the catching of salt water fish in said waters.

The section of the code giving the board of supervisors jurisdiction over fish and game must be strictly construed.

All those decisions holding that the board of supervisors have jurisdiction over fresh water fish are not applicable here. It is not questioned by appellants that the board has complete jurisdiction of fresh water fish; but, at the same time, it is our contention that the board is with-

out power to prohibit citizens from using nets which are used for the taking of salt water fish, in the waters involved in this case.

Section 2312, of the Code of 1906, provides for just such cases as this, reading as follows: "The boards of supervisors may prohibit the use of seines, barrel nets, gill nets and other like contrivances for taking fish, or any of them, or may restrict the use of same to water courses, lakes or ponds which annually go dry; may prohibit or regulate the use of same in particular waters, and may prescribe what kinds of seines or nets may be used and when and where.

Now, the legislature doubtless had in mind such a case as this when it used the word "regulate" in this section; that is all we desire the board to do, to properly regulate the use of nets in said waters, but not, in its regulating, to prohibit the use of nets in these waters, where salt water fish predominate and plentifully abound, as we think it is beyond the power of the board to prohibit the use of nets which are used for salt water fish catching in said waters; and we submit that the injunction should be granted, with the regulation and provision therein embodied that any fresh water fish that might be caught in such nets in these waters should be carefully returned to the water. The injunction can be granted with this regulation and still do no violence to the ordinance in so far as the board is empowered to pass such ordinance. We think that the injunction with such regulation should be granted, as the evidence shows that salt water fish plentifully abound in said waters, and that any fresh water fish that might be caught in such nets can be returned to the water with very small injury to the fresh water fish, and in view of the further evidence that many gars are caught in these nets and are always killed by the fishermen for the protection of the fishing, and that the killing of these gars so caught will more than offset the injury to fresh water fish by the use of nets in said waters.

We therefore respectfully submit that the lower court should have granted the injunction prayed for.

*M. D. Brown,* for appellee.

Section 4699, Hemingway's Code; section 2304, Code 1906, defines the term "fish" as used in the Game and Fish Chapter, to-wit: "The term 'game' includes all kinds of animals and birds found in the state and commonly so called; and the term 'fish' as used in this chapter embraces all manner of fresh water fish."

Section 4700, Hemingway's Code, gives the board of supervisors full jurisdiction and authority for the protection and preservation of the game and fish in their respective counties, and to conserve the same for the use and consumption of the inhabitants. See section 4700, Hemingway's Code.

Counsel for appellant in his brief in the first sentence under his argument says that there is no other case like this. In reply to this, we state that the case of *Ex Parte Fritz,* 86 Miss. 210, 38 So. 722, covers every phase of the instant case. We earnestly invite especial attention of the court to *Ex Parte Fritz,* 86 Miss. 210, and also *People* v. *Horling et al.,* a Michigan case, reported in 100 N. W. Reporter on page 691, and citations therein mentioned.

We are willing to rest our case on these two authorities above cited, and the authorities cited in the two cases. Without knowing what authorities would be cited in this brief, counsel for appellant has already anticipated this brief by a statement that the authorities cited in support of contention of appellee are not applicable because they deal entirely with fresh water and fresh water fish, in which he is mistaken especially as to the Michigan case, as it deals with water that flows into the Great Lakes, and the water from the Great Lakes into the water involved in the question decided by the Michigan court.

The theory of appellant is that fishing is a right, an inherent right, that individuals within the state have, and

his complaint is that this ordinance in question deprives appellant of such right. We challenge this theory as unsound and such is not the law. Quoting from *Ex parte Fritz, supra*: "Fish are *ferae naturae;* they are incapable until actually taken, of absolute ownership. In all running streams, large lakes, small lakes or outlets, and other waters the right of the state to regulate the time, the manner and extent of taking of fish is unquestioned. It is part of the police power of the state which has never been parted with, and cannot be surrendered. Their ownership is in the public and no individual has any absolute property right in them until they have been subjected to his control. It is not only the right of the state, but also its duty, to preserve for the benefit of the general public fish in its waters in their migrations and in their breeding places from destruction or undue reduction in numbers through the caprice, improvidence or greed of the riparian proprietors as well as of trespassers. *Ex Parte Fritz,* 86 Miss. 210, 38 So. 722, at page 723, and authorities cited thereunder.

We submit that this is an attempt on the part of appellants to violate the principle annunciated in the above citation and as shown by the record. Further as to the proposition as to whether or not to fish is a right or a privilege. Quoting from the case of *People* v. *Horling, supra*: "To fish is a privilege accorded by the state and the question of individual enjoyment is one of public privilege and not of private right." *People* v. *Horling et al.,* 100 N. W. 693; See, also, cases cited thereunder.

Now having fully sustained our position as to the law of the case as cited above, we wish to present the grounds of demurrer for your consideration, which we will do by setting out the grounds, and which we submit should have been sustained.

First, there is no equity on the face of the bill.

Second, the said bill shows that the complainants have the same right to fish in said waters with a hook and line as other citizens have; that is with hook and line and cast-

nets, and do not allege that they have the same right as other citizens have, but complain because they have not a greater and larger right than other citizens in this, to-wit: To use gill nets, seines or barrell nets to catch fish for commercial purposes out of said waters.

Third, the said bill shows on its face, that taken as a whole the complainants are not entitled to relief prayed for.

Fourth, that said bill shows on its face that complainants are seeking to have said waters opened up for their personal gain, thereby causing great detriment to all other citizens who fish with hook and line in said waters and to discriminate against said citizens in favor of complainants.

Fifth, the said bill shows that complainants are seeking to diminish the food supply of the people of the state by taking fish in great quantities.

Sixth, the said bill of complaint shows on its face that it is an attempt of the complainants to restrain the state of Mississippi from prosecution of complainants for the commission of crimes, to-wit: from the violation of the said ordinance of the board of supervisors prohibiting persons from the use of gill nets and trammel nets and seines in the said waters described in the bill of complaint and of which the complainants have a full and complete remedy at law.

Seventh, because this court is without jrrisdiction to give the redress prayed for in said bill of complaint.

In reply to the rehash of the testimony of the different witnesses by counsel in his brief for appellant will say: The learned Chancellor heard each and every witness testify, saw them and their demeanor on the witness stand, and, of course, in a better position to judge of the value and the weight of the testimony of each one than is this court, and as has often been announced by this court, and so hearing and seeing the witness and being in a better position the chancellor passed on the facts and found on the facts, and this court is so familiar with and it is so elemental in its nature as to the reversal of a finding of

facts by a chancellor that we deem it unnecessary to cite authorities on this proposition.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree dismissing the original bill.

The appellants exhibited their bill of complaint against the appellee, alleging that the appellee had adopted the following ordinance:

"Be it further ordered, that it shall be unlawful to use any gill, cast or trammel nets, seines, barrel or hoop nets, wire or pound nets, or any device other than hook and line, for catching fish in any of the rivers, bays, bayous, lagoons, lakes or inlets in Harrison county. But this shall not apply to the waters known as the Back Bay of Biloxi, east of the county bridge, commonly called Back Bay Bridge, and shall not apply to the waters of the Bay of St. Louis, south of the L. & N. Bridge; provided, however, that mullet may be caught in a cast net in said waters the entire year, except during the months of March, April, and May, but no cast net shall ever be used in Wolf river north of De Plaines bayou, and in Bayou Benard north or west of Handsboro Bridge, and in Biloxi river north of Lorraine Bridge, and Tchouticabouffa river north of Tchouticabouffa Bridge."

That a portion of the waters covered by this ordinance is brackish, in which waters are to be found both fresh and salt water fish; that consequently the ordinance is void in so far as is applies to the catching of sea fish. The prayer of the bill is that the appellee be enjoined from enforcing the ordinance.

The only question argued by counsel, and the only one that we will deal with, is the validity vel non of the ordinance complained of.

It is true that under section 2304, Code of 1906, section 4699, Hemingway's Code the jurisdiction given boards of supervisors over fish in their respective counties includes only fresh-water fish; nevertheless they are given by the following section of the Code full "authority for

the protection and preservation of game and fish in their respective counties," which, *ex vi termini,* includes the power to do whatever is necessary for their protection and preservation, and since it appears from the evidence that the use of the nets prohibited by the ordinance here in question would result in the catching of fresh-water fish as well as sea fish, and in disturbing their breeding grounds, authority to forbid the use of such nets is necessarily vested in the appellee, otherwise it cannot effectually discharge its duty of protecting and preserving the fresh-water fish in waters inhabited also by sea fish. That the fresh-water fish may be returned to the water after being caught in the nets cannot have the effect of withdrawing from the appellee the power to forbid the use of the nets.

*Affirmed.*